UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHANSLER LUCAS, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD MEDICAL CORP, et al., <br><br> Defendants. | CAUSE NO. 3:20-CV-358-JD-MGG |

OPINION AND ORDER

Chansler Lucas, a prisoner without a lawyer, filed an amended complaint seeking monetary damages only against Ms. Livers, Dr. Jackson, Dr. Liaw, and Ms. Reboc because he is unhappy with how a skin rash has been managed while incarcerated at Westville Correctional Facility. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Here, Lucas alleges that, when he arrived at the Reception Diagnostic Center in May of 2019, he developed tiny red bumps that itched on his thighs and legs. Medical staff at the RDC diagnosed him with scabies, providing medication, and placed him in quarantine. He was then transferred to Westville Correctional Facility.

At Westville, his condition worsened. A nurse diagnosed him with scabies again, provided medication, and directed that his clothes be washed. His condition got worse. He developed large knots on his genitals, buttocks, and thighs, in addition to the small red bumps. He was uncomfortable when sitting, standing, sleeping, and urinating. He requested medical attention and saw Dr. Jackson in July 2019. He was again diagnosed with scabies and referred to nurses Ms. Livers and Ms. Reboc to receive medication and to arrange to have his laundry washed. The nurses allegedly disagreed with Dr. Jackson's assessment. They believed the rash was caused by a bacterial infection. Without referring Lucas back to Dr. Jackson, they decided not to provide medication for scabies. Lucas left with nothing to ease his discomfort or address his condition.

His condition continued to worsen. He submitted another medical request and saw Dr. Jackson in September 2019. After an examination, Dr. Jackson told him the knots were boils. He prescribed two antibiotics, a steroid, and itch cream. None of these medications helped.

In November 2019, Lucas asked to be seen by urgent care. He was seen by Nurse. Livers. She thought his condition was fungal. She opined that the fungus was transferring from his feet to his legs and groin when he slid his feet through his underwear and advised him to throw his shoes away. Lucas explained that he did not have athletes' foot. She referred Lucas to Dr. Jackson. He prescribed another antibiotic, a steroid cream, and a fungal cream. The problem continued to get worse.

Lucas submitted another request for medical attention and was seen by Dr. Liaw. He prescribed more of the antibiotic that Lucas had just had.

2

Lucas filed a grievance requesting a consultation with a specialist. Nurse Livers responded by indicating that Lucas cannot dictate or demand special privileges. He wrote the Commissioner, and in January or February 2020, he was seen by Dr. Liaw again. Blood was drawn and steroids were ordered. However, after three days, the steroids were discontinued, because they were not helping.

Lucas was miserable and asked for a lay-in from programing. The request was initially denied, but his primary counselor did grant the request later. While awaiting the results of the blood test, Lucas stopped using soap, stopped sending his clothes to laundry, and stopped using his sheets and blankets. These things helped some. He waited for three weeks for the results of the blood test, asking for medical care each day, only to be told no because the test results were not back. When correctional officers called medical staff at Lucas's request, they were told that Lucas was faking and to stop calling.

Finally, on February 20, 2020, a correctional officer sent Lucas to Sgt. Flakes to discuss getting medical care. She took Lucas to medical and had him show the nurse the bumps. She remained present at Lucas's request, so that she too could see. Lucas reports that, at this point, it was very painful and difficult to urinate. After seeing Lucas's condition, Sgt. Flakes stated, "Faking Please." She then told Lucas to get dressed and that they were going to urgent care. Sgt. Flakes demanded that Lucas be seen. He was given three injections: an antibiotic, antihistamine, and pain medication. He was told that the results of the blood work were back and were negative. More blood was drawn. He was given a catheter and sent back to the dorm to wait again. His

condition improved some as a result of something he was given this time. He believed it was the antihistamine and asked for more. It is unclear if he received it.

At the end of February, he woke with tiny bumps covering his arms and hands. He sought medical care and then waited again. Around this same time, there was a meeting that included medical staff, counselors, and prison officials. He was discussed at this meeting. The counselors asked why he was not being helped. The response was that he was drug seeking.[1] Lucas believes this is because he asked Nurse Livers for medication to relief the itching and burning. She responded by saying he had medication - an antibiotic.

In March 2020, Lucas was seen by Dr. Liaw again. A biopsy was performed. He was told that the results of the additional bloodwork were back, and everything was negative. He asked for the same injections that provided relief the previous month. Dr. Liaw said no but prescribed Zyrtec. Although prescribed, he was never given the Zyrtec.

On March 20, 2020, after medical staff had denied him care repeatedly, a night shift correctional officer called a sergeant and Lucas was taken to urgent care. The nurse that saw him believed that Lucas was having an allergic reaction. He gave him two shots of Benadryl and steroid tablets. His condition improved.

He saw Dr. Liaw and Nurse Livers on March 27, 2020. Dr. Liaw thought his condition looked better, but Lucas disagreed. Lucas had observed that, when he washed

---

[1] Lucas reports that a search of his property box did not reveal any medication.

4

his clothes, he broke out in new bumps wherever the clothes touched his skin. He asked for something to wash his clothes and his body with that would not hurt him. And, he asked for an allergy medication. He was told that medical could not provide him with different soaps. He was told he could have Zyrtec or steroids but not both. He asked which would make the knots go away. He was given steroids. The biopsy results showed that Lucas had contact dermatitis on his arm. He was told that it would go away in two months, and to take the steroids.

Lucas has written so many healthcare requests that he has been told to stop writing them. On May 19, 2020, the sergeant took Lucas to urgent care and he was given a shot of Benadryl. Lucas reports that he continues to suffer, that medical staff have stopped trying to find a solution, and that he is tired - mentally and physically - from months of suffering.

As noted in this court's earlier order (ECF 5), in medical cases, the Constitution is violated only when a defendant was deliberately indifferent to an inmate's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005)

5

(quotation marks, brackets, and citation omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). However, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id.* Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Moreover, constitutionally adequate care does not require the total alleviation of pain. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008). With this standard in mind, Lucas's allegations against each of the four named defendants will be considered.

Lucas saw Dr. Jackson on three occasions. In July he diagnosed Lucas with scabies and ordered medication for that condition. In September he thought the knots were boils and prescribed medication for that condition. In November he thought the rash may be fungal and provided medications for that condition. None of it worked, but

6

that does not demonstrate deliberate indifference. No reasonable fact finder could conclude from the allegations in Lucas's complaint that Dr. Jackson's care of Lucas was not based on the exercise of his medical judgment. Thus, he cannot proceed against Dr. Jackson.

By the time Lucas saw Dr. Liaw, medication for scabies, boils, and a fungal infection had all failed. He initially prescribed a medication that had already been tried. When he saw him next, in January or February, he tried steroid injections and ordered bloodwork. The steroids were discontinued after three days because Lucas did not improve, and no further treatment was provided pending the results of the blood work. When Lucas saw Dr. Liaw again in March, more bloodwork was ordered, and he was prescribed Zyrtec. While Lucas did not receive the Zyrtec, Lucas does not allege that Dr. Liaw is to blame for that. Dr. Liaw's treatment did not work, but – as with Dr. Jackson – no reasonable fact finder could conclude that Dr. Liaw's care of Lucas was not based on the exercise of his medical judgment. Thus, Lucas may not proceed against Dr. Liaw.

Regarding Nurse Livers and Nurse Reboc, in July 2019, after seeing Dr. Jackson, Lucas was referred to both Nurse Livers and Nurse Reboc. The complaint alleges that the nurses disagreed with Dr. Jackson's diagnosis of scabies, did not give him medication for that condition, and did not refer him back to Dr. Jackson. Lucas filed a grievance and asked to see a specialist. Nurse Livers characterized his request not as a plea for help from a suffering inmate that had already tried multiple treatments to no avail, but as a request for "special privileges." She denied the request. Lucas also believes that Nurse Livers played a role in characterizing him as someone who was faking his condition and merely

drug-seeking; an explanation that at least Sgt. Flakes appears to have found not particularly credible after viewing Lucas's rash. Giving Lucas the benefit of the inferences to which he is entitled at this early stage of the case, the court concludes that Lucas has alleged facts from which a reasonable fact finder could conclude that both Nurse Livers and Nurse Reboc were deliberately indifferent to Lucas's suffering. Thus, he will be permitted to proceed against Nurse Livers and Nurse Reboc.

For these reasons, the court:

(1) GRANTS Chansler Lucas leave to proceed against Ms. Livers and Ms. Reboc in their individual capacities for compensatory and punitive damages for denying him constitutionally adequate medical treatment for his painful rash and lumps, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Dr. Jackson and Dr. Liaw;

(4) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) on Ms. Livers and Ms. Reboc at Wexford of Indiana, LLC, with a copy of this order and the amended complaint (ECF 7), pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant that does not waive service, if they have such information; and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Ms. Livers and Ms. Reboc to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 13, 2020

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT